No. 85-622

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

        Plaintiff and Appellant,

   -vs-

VAN BUREN LASTER,

        Defendant and Respondent.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter, Asst. Atty. General, Helena
Harold Hanser, County Attorney, Billings, Montana
Teresa M. O'Connor, Deputy County Attorney, Billings

    For Respondent:

        Robert L. Stephens, Jr., Billings, Montana

_____

Submitted on Briefs: July 31, 1986

Decided: September 9, 1986

Filed: SEP 9 - 1986

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Van Buren Laster was charged in the District Court, Thirteenth Judicial District, Yellowstone County, with one count of criminal sale of dangerous drugs, a felony, as specified in § 45-9-101, MCA. In the course of the trial before a jury, during the presentation of the State's case, the District Court granted defendant's motion for a mistrial. In a memorandum subsequent to the grant of the mistrial, the District Court found that further prosecution of the defendant would result in double jeopardy. On August 30, 1985, the District Court granted defendant's motion to dismiss the cause with prejudice. The State appeals from the order of dismissal.

We decide this case, as did the District Court, under federal law and federal precedents. In so considering the cause, we affirm the District Court.

The double jeopardy clause of the fifth amendment to the federal Constitution protects a criminal defendant from repeated prosecutions for the same offense. United States v. Dinitz (1976), 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273. The double jeopardy clause protects a defendant in his "valued right to have his trial completed by a particular tribunal. . . ." Wade v. Hunter (1949), 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978. The criminal defendant's right to have his case finally decided by the jury first selected is not absolute. A court will lift the double jeopardy bar to a second trial where "manifest necessity" exists, as when a mistrial is declared

by the judge following a lack of verdict by a hung jury. United States v. Perez (1824), 9 Wheat. 579, 580.

Where, however, the defendant moves for a mistrial and the same is granted, the "manifest necessity" standard does not apply. United States v. Tateo (1964), 377 U.S. 463, 467, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448, 451. There is again a narrow exception to this rule; where the defendant moves for mistrial but is goaded into doing so by the prosecutor's actions, the double jeopardy clause bars retrial even though defendant himself moved for the mistrial. United States v. Dinitz, supra.

In Oregon v. Kennedy (1982), 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 426, the United States Supreme Court outlined the bounds of the narrow exception under federal law. The general rule was that a motion by a defendant for mistrial in effect waived his claim to double jeopardy:

> Because of the confusion which these varying statements of the standard in question have occasioned in other courts, we deem it best to acknowledge the confusion and its justifiability in the light of these statements from previous decisions. We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. (Emphasis added.)

In determining the intent of the prosecutor in the case at bar, the District Court relied on the concurring opinion of Justice Powell that because "subjective" intent may often be unknowable, a court should rely primarily upon the objective facts and circumstances of the particular case.

- 3 -

Oregon v. Kennedy, 456 U.S. at 679-80, 102 S.Ct. at 2092, 72 L.Ed.2d at 427 (Powell, J., concurring). In considering the objective facts and circumstances of the case at bar, the District Court found "that the prosecutor did attempt to provoke this mistrial to afford the State a more favorable opportunity to convict by having an opportunity to charge the defendant with solicitation or sexual intercourse without consent."

As we noted, the charge against Laster in this case was that on October 7, 1984, he had committed a felony in the criminal sale of dangerous drugs. The information charging the defendant was supported by an affidavit of the deputy county attorney, stating Laster gave P.S., then aged 16, cocaine before engaging in sexual intercourse with her. The affidavit further recited that after she left the defendant, P.S. called her mother. She then went to the hospital for a rape exam and a blood test. The affidavit recites that her blood test was positive for cocaine.

The information against the defendant was not filed until November 9, 1984.

A urine sample was taken on the evening of October 7 from P.S. and was analyzed by a laboratory technician at the hospital in Billings.

A sample of her blood was also sent to the State Crime Lab. The hospital technician detected traces of a substance that may have been a cocaine derivative in the urine sample. That sample was apparently destroyed after the analysis was completed. The blood sample sent to the State Crime Lab which has more sensitive testing equipment, was not preserved in such a way that the presence or absence of cocaine could be established from that sample in that laboratory.

- 4 -

On February 8, 1985, defendant's counsel filed a motion to dismiss on the ground that the urine sample was adulterated through the State's testing procedures and so there was no independent corroboration of the complainant's testimony.

On February 20, 1985, the State, sensing from the laboratory report that its evidence was weak on whether cocaine was present, moved to amend the information to add an alternative count--criminal sale of imitation and dangerous drugs.

At a hearing on the two motions on March 5, 1985, a defense expert testified that the hospital technician's test results were consistent with substances that are contained in many over-the-counter cold remedies, as well as cocaine, and that the presence of those substances produce a similar result in the type of test performed. After the hearing, the District Court denied the motion to amend the information, and denied the defendant's motion to exclude the laboratory result provided that the State established a chain of evidence up to the point of the laboratory examination.

During the hearing, Laster was called to the stand. As to that portion of the hearing, the court found:

> During that hearing, the Defendant took the stand. On cross-examination, the prosecutor attempted to get the Defendant to admit that he is a pimp. During this line of questioning, defense counsel objected no less than fifteen times. The final objection was on the grounds that the examination was improper and consisted of discovery on the part of the State. This objection was sustained.

Before trial, the defendant filed a motion in limine regarding the foundation for the State's introduction of the urinalysis results and regarding hearsay evidence of other crimes. The District Court granted the motion on foundation

- 5 -

to the extent that the State had to establish the chain of custody until the urine sample reached the lab technician. The court further granted the motion in limine as to evidence of other crimes to the extent that evidence of solicitation and prostitution were not part of the res gestae and could not be introduced as part of the State's case-in-chief. No notice under State v. Just (1979), 184 Mont. 262, 273, 602 P.2d 957, 963 had been given. (Under Just, if the State intends to produce evidence of other crimes at the trial of the defendant, the State must give notice of such intention prior to the trial.)

On the morning of the trial, in chambers, Laster's counsel moved for an order in limine respecting conversations at which the defendant was not present between the defendant's brother, Eddy Laster, and P.S.'s sister, and P.S., relating to whether P.S. had agreed to go to Rockford, Illinois, with the defendant for the purpose of entering into prostitution. The court ruled that such proposed evidence was hearsay and would not be admissible unless defendant's counsel opened up the areas on cross-examination.

When the State called its first witness, L.I., the prosecutor tried on two occasions to elicit testimony that either L.I. or P.S. were solicited "to go into another profession" than that of a high school student. On each occasion, the objection thereto was sustained.

P.S. followed L.I. as the next witness. On at least three occasions, the District Court, upon objection, overruled the prosecutor's attempt to elicit testimony about conversations occurring when Van Buren Laster was not present.

A second development during the examination of P.S. occurred when the prosecutor sought to characterize the sexual intercourse between P.S. and Laster as rape. For an understanding of that development, a statement of the facts is necessary.

On the day of the incident, P.S. and her friend L.I. had gone to a shopping mall in Billings, Montana, for a few hours. They were picked up at the mall for a visit to the house occupied by P.S.'s sister Sheila and her consort, Eddy Laster, an admitted pimp. Eddy is the brother of the defendant here, Van Buren. At Sheila's house there were a number of people, including P.S., L.I., Sheila, Eddy Laster and other persons unidentified. Van Buren did not come to the house until later in the afternoon.

After Van Buren arrived, P.S. went upstairs to her sister's bedroom and tried on some of her sister's clothes, changing out of the shorts she was then wearing and into an outfit described as a red top and gray pants. After she came down from the upstairs bedroom, she went in Van Buren's car, sitting in the middle of the front seat between Van Buren and Van Buren's brother, Eddy, to a motel location, where several women, evidentally prostitutes, were getting ready to go out for the evening. From this location, Van Buren and P.S. took a taxi to the Wooden Nickel Motel, where Van Buren checked in, under the alias of Steve Horton, while P.S. stood beside him as he checked in.

In the motel room, P.S. said she watched television, while Van Buren busied himself around the premises. He gave her an alcohol drink which may have been vodka, two inches high in an ordinary motel drinking glass. She drank the vodka voluntarily, and reported no results. In the meantime,

Van Buren got out a suitcase, and took from it some implements that were drug paraphernalia, including test tubes and a "bong." She testified that he took a white powdery substance out of his suitcase, heated the substance and made out two "lines" on a mirror. He snorted or sniffed one of the lines and offered the other to her. She described that he scraped off the remaining line with a razor and by holding the razor to her nose, she was able to snort the remainder. Following this, Van Buren took off his clothes. She stated that she undressed herself because she didn't want him to undress her, and apparently she got into bed with Van Buren, where they had sexual intercourse. Later she got up, got dressed, when two other persons appeared at the motel room for a time, and they "snorted some more coke."

Sometime in the late evening, Van Buren arranged for her to take a taxi from the motel to her sister's home. There she found one unidentified person and leaving him on an excuse, went a short distance to the War Bonnet Inn, where she called her mother.

When her mother came, P.S. told her that she had been kidnaped by two blacks, forced to take cocaine and that she had been raped. Her mother immediately took her to the local hospital and a "rape kit" was formulated there including the urine sample which was later examined by the laboratory technician.

P.S. later admitted that the story she told her mother was a hoax and that the same story she had told to the public officials and examining doctor was also a hoax. She later revamped her story to indicate that she had gone to the motel with Van Buren, and that there he had given her the cocaine as was described above.

The cross-examination of P.S. by defendant's counsel was devastating. She admitted to changing her story of the events of the day and evening several times before the trial and during the trial. She was faced with other statements she had given to an examining physician following the incident, wherein she stated she had been forced to engage in both oral and rectal intercourse. On her cross-examination, she professed not to know what those terms meant.

When the deputy county attorney got P.S. back for redirect examination, she proceeded to examine P.S. on the meanings and methods of committing oral and rectal intercourse. At this point, the District Court recessed the proceedings for the day and asked counsel to meet her in chambers. It was at that time that the District Court granted the motion for mistrial which had been made by the defendant's counsel earlier in the day and took under advisement the motion to dismiss the cause entirely. The District Court later entered the written order dismissing the cause which is the subject of this appeal.

In reaching the decision that the prosecutor had attempted to provoke the defendant to move for a mistrial, the court made the following additional findings:

> From these objective facts and circumstances, the [c]ourt must determine whether the prosecutor intended to provoke the final motion for a mistrial to afford the State a more favorable opportunity to convict this defendant.
>
> This was a case where the prosecutor was aware that the State had little evidence on the offense charged. There were test results indicating the presence of a substance which may have been cocaine. There was a testimony of one witness whose credibility could, and was, questioned.
>
> This is a case where the prosecutor attempted, through a series of overreaching questions, to shift the focus of the trial from a charge of the

- 9 -

> criminal sale of cocaine to the Defendant's status
> as a black pimp.
>
> The prosecutor cannot have been surprised at the
> defendant's motion, in light of the number of
> objections raised before and during the trial to
> this line of questioning.
>
> These questions were so prejudicial that the
> defendant had little choice but to move for a
> mistrial to avoid a conviction for crimes with
> which he had not been charged.

It is clear from the record that the prosecutor attempted to get into evidence, after the District Court had ruled such evidence inadmissible, that P.S. had been solicited by others to engage in prostitution in Rockford, Illinois. It is clear from the record that the prosecutor sought to characterize as a rape an act of sexual intercourse which P.S. had described as consensual in her testimony at trial and in her statements given to the police.

It is further clear from the record that on redirect examination the prosecutor attempted to re-establish other sexual crimes purported to have been committed by Laster which P.S. had denied on her cross-examination but which she had reported to officials or examining physicians prior to the trial. It was at this point that the District Court declared a recess of the trial and shortly thereafter granted the motion for mistrial.

The State argues in brief that the Just test did not apply in this case, and that the evidence which the prosecutor sought to introduce was inseparably linked with the crime charged as part of the corpus delicti. See State v. Riley (1982), 199 Mont. 413, 649 P.2d 1273; State v. Gillham (Mont. 1983), 670 P.2d 544, 40 St.Rep. 1576; State v. Trombley (Mont. 1980), 620 P.2d 367, 37 St.Rep. 1871; and State v. Frates (1972), 160 Mont. 431, 503 P.2d 47. In

short, the State continues to argue that the following evidence was all admissable to prove the sale of dangerous drugs: that the defendant was a pimp and had raped P.S. at the time he gave her cocaine; that the defendant and his brother were pimps; that in acquiring P.S. as one of his prostitutes, Laster plied her with alcohol and cocaine, anesthetizing her so as to have sexual intercourse with her with minimal resistance. Not explained by the State is why these crimes were not charged by information against the defendant. Solicitation for prostitution, engaging in prostitution, and rape, are as serious, if not more serious than a single instance of offering cocaine to a 16 year old, heinous enough in itself.

The State's argument falls from its own weight. P.S. testified she had been "raped" by Van Buren Laster. The testimony by which the prosecutor sought to prove solicitation for prostitution was clearly hearsay outside of the presence of the defendant. The State's weak evidence that the substance was cocaine was probably irreparable. What the District Court could not finally accept was the State's effort to shore up its weak proof of the drug charge by attempting to produce evidence of other crimes which might prejudice the minds of the jurors.

Moreover, the arguments of the State are beside the point. The question at issue here on appeal is whether the prosecutor intended to attempt to provoke a mistrial. Our duty on appeal is to determine whether that finding can be supported. This is the first instance where a finding of that nature has come to this Court since the decision in Oregon v. Kennedy (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416.

- 11 -

Ordinarily, the standard of review to be applied to a finding of fact by a district court in a criminal case is whether the finding of the district court amounts to an abuse of its discretion. Thus, we will support a determination of a district court as to whether a motion to file an information is supported by probable cause unless there is an abuse of discretion. State v. Bradford (Mont. 1984), 683 P.2d 924, 929, 41 St.Rep. 962, 967. A motion whether to grant or deny a motion to dismiss at the close of the State's case is within the sound discretion of the trial court and will not be disturbed unless an abuse of that discretion is shown. State v. Whitewater (Mont. 1981), 634 P.2d 636, 637, 38 St.Rep. 1664, 1666.

In State v. Counts (Mont. 1984), 679 P.2d 1245, 1248, 41 St.Rep. 681, 686, we held that the ruling of the District Court on a motion for mistrial is not to be lightly disturbed. There we approved the holding of Schmoyer v. Bordeau (1966), 148 Mont. 340, 420 P.2d 316, that in order to overturn the court's ruling on a motion for mistrial, this Court must be shown the error of the trial court's ruling by evidence which is clear, convincing and practically free from doubt. In this case, with respect to the dismissal of the cause on grounds of double jeopardy, we adopt the usual standard that the State has the burden to show an abuse of discretion by the District Court. We find none.

The judgment of the District Court is affirmed.

John C. Shehy
Justice

We Concur:

- 12 -

_____
Chief Justice

_____

_____

_____

_____

_____
Justices