No. 02-205

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 49

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

SABAH O. MALLAK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2000-930,
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Sabah O. Mallak, Pro Se, Deer Lodge, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

          Dennis Paxinos, County Attorney; Rod Souza, Deputy County
Attorney, Billings, Montana

Submitted on Briefs: November 20, 2003

Decided: March 1, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Sabah O. Mallak appeals his convictions following his pleas of guilty to felony charges of burglary and witness tampering and to two misdemeanor charges of criminal contempt. We affirm.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in denying the Appellant's motion to dismiss the charges against him on double-jeopardy grounds?

¶4 2. Did the District Court err in denying the Appellant's motion to withdraw his guilty plea?

¶5 3. Did the District Court err in refusing to dismiss the charges against the Appellant on the grounds that exculpatory evidence was not preserved?

FACTUAL AND PROCEDURAL BACKGROUND

¶6 The Appellant was charged by Information on November 8, 2000, with partner or family member assault (PFMA), a felony. The State alleged that on or about the night of November 2, 2000, the Appellant punched and kicked his girlfriend, Tracie Dewey (Tracie), causing her bodily injury or the reasonable apprehension of it. The State amended the Information several times, and at trial, the Appellant also faced the felony charges of burglary and witness tampering, a misdemeanor charge of resisting arrest, and two more misdemeanor charges of criminal contempt, all arising out of or directly related to the alleged assault.

¶7     On the first day of trial, April 23, 2001, the District Court granted the Appellant's outstanding motion to exclude evidence regarding his prior bad acts, specifically, instances of physical violence perpetrated by the Appellant against Tracie in the past. Before the following day's opening statements, the District Court denied the Appellant's motion to dismiss the PFMA and burglary charges for the State's failure to preserve what he characterized as exculpatory physical evidence–audiotape recordings of Tracie testifying falsely under oath in prior proceedings against the Appellant.

¶8     At trial, the Appellant sought to impeach Tracie's credibility on cross-examination by confronting her with these perjurious statements, which she admitted having made. The District Court perceived the potential in this line of questioning for violation of its order *in limine* which excluded evidence of the Appellant's having previously assaulted Tracie, and admonished the State in a side bar to exercise caution in rehabilitating its complaining witness on redirect:

> THE COURT: . . . I think [the State is] allowed to ask her why she lied, but I'm not going to allow any testimony about why you were afraid or anything like that. Leave it at that.
>
> MR. SOUZA: I'm not going to go any further.
>
> (Whereupon, the proceedings at the bench concluded.)
>
> Q. (By Mr. Souza) You were interviewed by the public defender's office, Tracie?
>
> A. Yes.
>
> Q. And in that interview you told them that you lied?
>
> A. Yes.

Q. Did you tell them why you lied?

A. Yes.

Q. Why don't you now tell the jury why you have previously lied in court.

A. Because I was scared *of him*. [Emphasis added.]

¶9 The Appellant objected at this point and moved for a mistrial on the grounds that the phrase italicized above implied that he had frightened Tracie by perpetrating bad acts. The District Court denied the motion, and the trial proceeded.

¶10 Deputy Sheriff Ron Wilson testified for the State later that same day. He brought the audiotape recording of a telephone call that the Appellant placed to Tracie on November 7, 2000, which was entered into evidence and played for the jury. Tracie was heard on the tape to say to the Appellant that he was "not going to get away with it *this time*" (emphasis added). After the jury left the courtroom, the Appellant again objected and moved for a mistrial on the grounds that the State had violated the order *in limine*. This time, the District Court granted the motion, and a new trial date was set.

¶11 Prior to the second trial, the Appellant moved to dismiss the case on double jeopardy grounds, claiming that the State had provoked him into moving for a mistrial. The District Court denied this motion. The parties then entered a plea bargain agreement, wherein Appellant agreed to plead guilty to witness tampering and to two counts of criminal contempt, and plead no contest to burglary. In exchange, the State dropped the original charge of PFMA.

4

¶12 Less than two months later, the Appellant moved for leave to withdraw from the plea agreement and go to trial on all the State's charges against him. The sole basis for his motion was his claim that certain prescription medications which he was taking when he entered his several pleas rendered him incapable of pleading intelligently and knowingly. After an evidentiary hearing on the matter, the District Court denied this motion and sentenced the Appellant on November 13, 2001. This appeal followed.[1]

## STANDARD OF REVIEW

¶13 The grant or denial of a motion to dismiss in a criminal case is a question of law which we review *de novo* on appeal. *State v. Weldele*, 2003 MT 117, ¶ 13, 315 Mont. 452, ¶ 13, 69 P.3d 1162, ¶ 13. Our standard of review is plenary, and we determine whether a district court's conclusion is correct. *Weldele*, ¶ 13.

¶14 Furthermore, a court's resolution of an issue involving a question of constitutional law is a conclusion of law which we also review to determine whether the conclusion is correct. *City of Missoula v. Robertson*, 2000 MT 52, ¶ 14, 298 Mont. 419, ¶ 14, 998 P.2d 144, ¶ 14.

¶15 We review a district court's denial of a defendant's motion to withdraw a guilty plea to determine whether the court abused its discretion. *State v. Schaff,* 1998 MT 104, ¶ 15, 288 Mont. 421, ¶ 15, 958 P.2d 682, ¶ 15; *State v. Enoch* (1994), 269 Mont. 8, 11, 887 P.2d 175, 177. No categorical standard exists as to how a district court must address a request to

---

[1]Following the filing of Appellant's brief with this Court, prepared by counsel, and the State's brief in response, Mallak moved to discharge his attorney. The case was remanded to the District Court for hearing, after which the court granted Mallak's motion and request to proceed *pro se*. Thereafter, Mallak filed his own brief on appeal, to which the State responded.

withdraw a guilty plea; rather, each case must be considered in light of its unique record. *Mallak v. State*, 2002 MT 35, ¶ 16, 308 Mont. 314, ¶ 16, 42 P.3d 794, ¶ 16.

## DISCUSSION

¶16 *1. Did the District Court err in denying the Appellant's motion to dismiss the charges against him on double-jeopardy grounds?*

¶17 The Appellant claims that the State goaded him into moving for a mistrial by purposely violating the District Court's order *in limine*, in both its redirect examination of Tracie and by introducing into evidence the audiotaped conversation between Tracie and the Appellant; that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution therefore barred the State from re-trying the Appellant on the same charges as those which he faced at his first trial; and that the District Court consequently erred in denying his motion to dismiss the indictment.

¶18 The Double Jeopardy Clause, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy* (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416. The Double Jeopardy Clause protects a defendant in his or her "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter* (1949), 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978. The criminal defendant's right to have his case finally decided by the jury first selected is not absolute, however. A court will lift the double-jeopardy bar to a second trial where "manifest necessity" exists, as when a mistrial is declared by the judge following a lack of verdict by a hung jury. *Kennedy*, 456 U.S. at 672, 102 S.Ct. at

6

2087, 72 L.Ed.2d at 422 (citations omitted). When a mistrial is granted on the defendant's motion in a criminal case, the "manifest necessity" standard does not apply, and the Double Jeopardy Clause ordinarily does not bar the State from trying him or her again on the same indictment. *United States v. Tateo* (1964), 377 U.S. 463, 467, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448, 451. There is again, though, a narrow exception to this rule:

> Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Kennedy*, 456 U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425.

¶19 In a concurrence, Justice Powell proposed considering "the objective facts and circumstances of the particular case" in order to determine prosecutorial intent. *Kennedy*, 456 U.S. at 679-80, 102 S.Ct. at 2092, 72 L.Ed.2d at 427 (Powell, J., concurring). We proceeded accordingly in *State v. Laster* (1986), 223 Mont. 152, 724 P.2d 721.

¶20 As commentary has pointed out, the defendant whose mistrial motion is granted will succeed only with great difficulty in raising the Double Jeopardy Clause as a bar to further prosecution on the indictment:

> In cases of mistrial, there must be a finding of "Machiavellian" design and a vision of future moves worthy of a chess master: first, the prosecutor's perception that the case has gone amiss in some unanticipated way, coupled with an assessment that if only the trial could start over things would improve; then, the decision to goad defense counsel into naively doing the prosecutor's concealed bidding by moving for the mistrial that the prosecutor secretly desires; followed by some feigned but half-hearted opposition to the defense counsel's motion; all the while hoping that the trial court thereby has been successfully manipulated into granting it.

7

Kenneth Rosenthal, *Prosecutor Misconduct, Convictions, and Double Jeopardy: Case Studies in an Emerging Jurisprudence*, 71 Temple L. Rev. 887, 911 (1998).

¶21    Thus, in *Laster*, the defendant was charged by information with criminal sale of dangerous drugs.  The information was supported by the deputy county attorney's affidavit, which stated that the defendant gave cocaine to P.S., then aged sixteen, and engaged in sexual intercourse with her.  *Laster*, 223 Mont. at 154, 724 P.2d at 723.

¶22    From this point, the State's case began to fall apart.  Blood and urine samples were taken from the girl when she arrived at an area hospital shortly after her encounter with the defendant.  The blood sample was sent to the State's Crime Laboratory, but since it was not properly preserved for transit, no conclusive results could be obtained from it.  As for the urine sample, the hospital testing procedure merely indicated the presence therein of a substance that may have been a cocaine derivative, and the sample was destroyed after the analysis was complete.

¶23    These events prompted the defense to move for a dismissal of the charge on the grounds that the complainant's testimony lacked independent corroboration.  The State, perceiving the unexpected weakness of its case, moved to amend the information to add the alternative count of criminal sale of imitation and dangerous drugs.  Both these motions were denied.  *Laster*, 223 Mont. at 154-55, 724 P.2d at 723.   At a hearing on these two motions, however, an expert for the defense testified that the results of the hospital's urine test were consistent with the previous ingestion of many over-the-counter cold remedies, as well as cocaine.  *Laster*, 223 Mont. at 155, 724 P.2d at 723.  To make matters worse for the State,

cross-examination of the complainant at trial established for the jury that she had several times changed her account of the events in question. *Laster*, 223 Mont. at 157, 724 P.2d at 725.

¶24 The State reacted to these reverses by "attempt[ing], through a series of overreaching questions, to shift the focus of the trial from a charge of the criminal sale of cocaine to the Defendant's status as a black pimp." *Laster*, 223 Mont. at 158, 724 P.2d at 725 (quoting the district court's findings). For example, on the morning of trial, the district court entered an order *in limine* which excluded, as hearsay, evidence of conversations, at which the accused was not present, between the defendant's brother and both the complainant and her sister, regarding whether the complainant had agreed to accompany the defendant to another state for the purpose of entering into prostitution there. Nonetheless, the prosecutor tried several times to elicit testimony thereon. *Laster*, 223 Mont. at 155-56, 724 P.2d at 724. The prosecutor also tried to re-characterize the complainant's sexual encounter with the defendant as rape, an offense with which the defendant had not been charged, and an accusation which the complainant had already recanted. *Laster*, 223 Mont. at 156-57, 724 P.2d at 724.

¶25 Given these and other findings, we ruled that the district court did not abuse its discretion in determining that "the prosecutor intended to provoke the final motion for a mistrial to afford the State a more favorable opportunity to convict this defendant," and granting the defendant's motion to dismiss on double-jeopardy grounds. *Laster*, 223 Mont. at 158-59, 724 P.2d at 725-26.

9

¶26    We see little factual similarity between the prosecutor's actions in *Laster* and the present case.  First, as the District Court noted in its Order and Memorandum denying the Appellant's motion to dismiss, the prosecution was in the midst of presenting a strong case when the motion for mistrial was granted.  Physical evidence, and the testimony of two police officers as to their impressions of the scene, had been introduced from which the jury could draw conclusions favorable to the State.  The District Court noted further that its order *in limine* was only violated by the testimony and tape in combination, and that neither alone would have justified the granting of a mistrial.  This point is more significant in light of the fact that the District Court found the part of Tracie's testimony to which the Appellant objected to have been the product of the prosecutor's inadvertence, not intention.  This impression is strengthened by the fact that the State's question did not inevitably lead to a violation of the order *in limine*, unlike the inherently violative questioning in which the *Laster* prosecution engaged.

¶27    We therefore conclude that the District Court did not abuse its discretion in denying the Appellant's motion to dismiss the charges.

¶28    ***2. Did the District Court err in denying the Appellant's motion to withdraw his guilty plea?***

¶29    As indicated above, the Appellant based his motion to withdraw his guilty plea on the sole argument that certain prescription medications which he was then taking deprived him of the capacity to make a knowing and intelligent plea.  After a full evidentiary hearing on this issue, the District Court denied the Appellant's motion and sentenced him.

¶30 On appeal, the Appellant has abandoned this theory in favor of the argument that his attorneys failed to advise him properly as to the possible consequences of his guilty plea and coerced him to plead guilty.

¶31 It is well settled that a party may not change his or her theory on appeal, *State v. Henderson* (1994), 265 Mont. 454, 458, 877 P.2d 1013, 1016, it being fundamentally unfair to fault a district court for failing to rule correctly on an issue which it was never given the opportunity to consider. *Wright v. Mahoney,* 2003 MT 141, ¶ 14, 316 Mont. 173, ¶ 14, 71 P.3d 1195, ¶ 14. Accordingly, we refuse to entertain this new argument on appeal.

¶32 *3. Did the District Court err in refusing to dismiss the charges against the Appellant on the grounds that exculpatory evidence was not preserved?*

¶33 The Appellant moved before trial for a dismissal of the charges of PFMA and burglary on the grounds that audiotape recordings of the complainant's false testimony in a previous proceeding were lost or unable to be located, and now challenges the District Court's denial of his motion. He asserts that "court transcripts that happened to be exculpatory evidence on the current case were deliberately destroyed to help the prosecution convict the defendant on bogus allegations." The State does not address this issue.

¶34 We note first that there is no record made in the District Court regarding a deliberate destruction of this evidence or demonstrating related factual assertions which the Appellant now argues. The Appellant acknowledges this deficiency, but blames it upon his trial counsel, who "should have inquired into how and why court records got lost." He further argues that, although trial counsel moved for dismissal of the charges on this ground, counsel nonetheless "failed to discuss . . . the main reason the transcripts were relevant to this case."

11

¶35 Although this issue, as stated, appears to challenge the District Court's denial of the motion to dismiss, the Appellant's argument is a challenge to the handling of the issue by his trial counsel, essentially a claim of ineffective assistance of counsel. However, the Appellant acknowledges that the record neither demonstrates the alleged inadequacies in his counsel's performance, nor illustrates the additional factual contentions which would make the missing audiotapes relevant. He does not argue that the District Court's denial of his motion, based upon the grounds presented at trial, was improper.

¶36 Under these circumstances, we must decline to address the Appellant's arguments. The issue, as presented by the Appellant, was not preserved for appeal, and neither does the record illustrate the inadequacies of trial counsel claimed by the Appellant. Where a claim of ineffective assistance of counsel is based on matters outside the record, we will refuse to address the matter on appeal and allow the defendant to file a postconviction proceeding. *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, ¶ 14, 97 P.3d 1095, ¶ 14.

¶37 We affirm.

/S/ JIM RICE

We Concur:

/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART