No. 05-016

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 255

STATE OF MONTANA,

            Plaintiff and Respondent,

      v.

BRANDON KILLAM,

            Defendant  and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No.  ADC 03–603
                Honorable Thomas M. McKittrick, Presiding Judge


COUNSEL OF RECORD:

            For Appellant:

                  Carl B. Jensen, Jr., Attorney at Law, Great Falls, Montana

            For Respondent:

                  Hon. Mike McGrath, Attorney General; Pamela P. Collins,
                  Assistant Attorney General, Helena, Montana

                  Brant Light, Cascade County Attorney; Mary Ann Ries,
                  Deputy County Attorney, Great Falls, Montana


                              Submitted on Briefs:  August 30, 2005

                                      Decided:  October 18, 2005


Filed:

      _____
                        Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Brandon Killam (Killam) appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, on his conviction and sentence for the offense of aggravated assault.  We affirm.

¶2      The sole issue on appeal is whether Killam's right to due process was violated at the sentencing hearing when the prosecution recommended the imposition of the maximum sentence allowed by statute.

BACKGROUND

¶3      In December of 2003, the State of Montana (State) charged Killam by information with the felony offense of aggravated assault.  Killam appeared for arraignment, at which time the District Court informed him of the charge against him, that the maximum penalty for aggravated assault was 20 years in the Montana State Prison (MSP) and a $50,000 fine, and that, because he allegedly used a dangerous weapon in committing the offense, the sentence was subject to a sentence enhancement of up to 10 years in the MSP.  Killam pleaded not guilty to the charge and the District Court set the case for trial.

¶4      During subsequent plea negotiations between the State and Killam, the State apparently offered to enter into a plea agreement whereby, in exchange for Killam's guilty plea to aggravated assault, the State would recommend a sentence of 20 years on the assault charge, with an additional 5 years, suspended, for the use of a dangerous weapon.  Killam rejected the plea agreement offer.

2

¶5    In October of 2004, Killam appeared before the District Court and pled guilty to aggravated assault. The guilty plea was an open plea, in that there was no plea agreement between the parties and the State had made no promises to Killam regarding sentencing recommendations. The District Court accepted the guilty plea, scheduled a sentencing hearing and ordered a presentence investigation report.

¶6    At the sentencing hearing, the District Court heard testimony from various witnesses, including Killam, and then asked the State for its sentencing recommendation. The State recommended the court sentence Killam to 20 years in the MSP for the aggravated assault charge, with a consecutive 10-year sentence for the use of a dangerous weapon in committing the offense. The State also recommended that Killam not be eligible for parole for the first 15 years of the sentence. Killam objected to the State's recommendation, arguing that a sentencing recommendation which was greater than the sentence offered by the State in prior plea negotiations violated his right to due process. The District Court overruled the objection. The court eventually sentenced Killam to 20 years in the MSP for the aggravated assault offense and 10 years, with 5 suspended, in the MSP for the use of a dangerous weapon in committing the assault. The sentences were to run consecutively and there were no restrictions on Killam's eligibility for parole. The District Court entered judgment on the conviction and sentence. Killam appeals.

STANDARD OF REVIEW

¶7 A district court's resolution of an issue involving a question of constitutional law is a conclusion of law which we review to determine whether the court's conclusion is correct. *State v. Mallak*, 2005 MT 49, ¶ 14, 326 Mont. 165, ¶ 14, 109 P.3d 209, ¶ 14.

DISCUSSION

¶8 Was Killam's right to due process violated at the sentencing hearing when the prosecution recommended the imposition of the maximum sentence allowed by statute?

¶9 Killam contends the District Court erred in overruling his objection to the State's sentencing recommendation. Although he concedes that sentencing recommendations are generally within the prosecution's discretion, he asserts that retaliatory actions by the prosecution in response to a defendant's exercise of procedural rights violates due process. Thus, according to Killam, the State acted vindictively and violated his right to due process when, in response to his refusal to enter a plea agreement, the State--after obtaining a conviction--recommended a sentence of greater length than the sentence it had offered to recommend during earlier plea negotiations. Killam relies primarily on *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, and *Blackledge v. Perry* (1974), 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, in support of his argument that the State violated his due process rights.

¶10 In *Pearce*, the defendant was convicted of assault with intent to commit rape and was sentenced to a term of 12 to 15 years. Postconviction proceedings resulted in his conviction being reversed. The defendant was retried, convicted and sentenced to an eight-year term which, when added to the time he already had spent in prison, amounted to a longer sentence

4

than he received after the first conviction. The defendant challenged his conviction and sentence, arguing that the increased sentence following his second conviction was unconstitutional. *Pearce*, 395 U.S. at 713, 89 S.Ct. at 2074, 23 L.Ed.2d at 662-63.

¶11     The United States Supreme Court held that neither the double jeopardy nor equal protection provisions of the United States Constitution prohibit a trial court from imposing a more severe sentence on a defendant in resentencing after an original conviction has been set aside. *Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079, 23 L.Ed.2d at 668. However, the Supreme Court determined that due process would be violated if a greater sentence were imposed as punishment to the defendant for successfully having the original conviction overturned. *Pearce*, 395 U.S. at 723-24, 89 S.Ct. at 2080, 23 L.Ed.2d at 668. The Supreme Court stated that

> [d]ue process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669. The Court held that, in order to ensure that such motivation in resentencing does not exist, a lengthier sentence on resentencing after a new trial must be based on objective information of record concerning identifiable conduct of the defendant occurring after the original sentencing. *Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. Thus, vindictiveness in resentencing after

5

a new trial is presumed in the absence of objective information of record justifying the increased sentence.

¶12    In *Perry*, the defendant was convicted of a misdemeanor offense in a court of limited jurisdiction and received a 6-month sentence. He appealed his conviction and requested a trial *de novo*. After the defendant filed his notice of appeal, but prior to the trial *de novo*, the prosecution obtained an indictment charging the defendant with a felony based on the same conduct underlying the misdemeanor charge. The defendant subsequently pled guilty to the felony and was sentenced to a prison term of five to seven years. He later challenged his conviction and sentence arguing, *inter alia*, that the prosecution's act of increasing the charge against him to a felony in response to his exercising his right to appeal deprived him of due process of law. *Perry*, 417 U.S. at 22-23, 94 S.Ct. at 2100, 40 L.Ed.2d at 631-32.

¶13    In addressing this issue, the United States Supreme Court began by reiterating its ruling in *Pearce* and subsequent cases that penalizing a defendant for successfully pursuing a statutory right of appeal or collateral review by imposing an increased sentence after retrial violates due process of law. *Perry*, 417 U.S. at 25, 94 S.Ct. at 2101, 40 L.Ed.2d at 633. The Court observed, however, that only those instances of increased punishment after retrial which posed a realistic likelihood that the punishment was vindictive offended due process. The Supreme Court also noted that, while *Pearce* and its progeny all dealt with instances where a harsher sentence was imposed on a defendant after retrial and the present case involved the prosecution increasing the severity of the charged offense in response to a

6

defendant's assertion of his right to appeal, the same opportunity for vindictiveness arose. *Perry*, 417 U.S. at 27, 94 S.Ct. at 2102, 40 L.Ed.2d at 634.

> A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo*, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration.

*Perry*, 417 U.S. at 28, 94 S.Ct. at 2102-03, 40 L.Ed.2d at 634-35.

¶14 *Pearce* and *Perry* are readily distinguishable from the present case. In those cases, the defendants had been tried and convicted, successfully challenged those convictions via appeal or collateral attack, and were subjected to increased punishment on retrial. Here, the State's sentencing recommendation to which Killam objects did not occur during proceedings on retrial. Killam had not previously been convicted and, necessarily, no successful appeal of such a conviction had occurred. Nor has a successful collateral attack occurred in the present case. Thus, *Pearce* and *Perry* are of no assistance to Killam here.

¶15 The State contends, however, that the United States Supreme Court addressed circumstances similar to the present case in *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604. We agree.

¶16 In *Bordenkircher*, the defendant was charged with the felony offense of uttering a forged instrument. After his arraignment on the charge, the defendant and his attorney met with the prosecutor to discuss a possible plea agreement. During negotiations, the prosecutor offered to recommend a specific sentence in exchange for the defendant's guilty plea. The prosecutor further informed the defendant that, if he did not accept the plea offer, the

7

prosecutor would seek a grand jury indictment under the habitual offender statutes which would subject the defendant to an additional term of life in prison based on his two prior felony convictions. The defendant chose to reject the plea offer and proceed to trial. The prosecutor obtained an indictment under the habitual offender statutes and a jury convicted the defendant of both the underlying forgery charge and the habitual offender charge. *Bordenkircher*, 434 U.S. at 358-59, 98 S.Ct. at 665-66, 54 L.Ed.2d at 607-08.

¶17  The defendant subsequently sought a federal writ of habeas corpus based on his assertion that, under the principles set forth in *Perry*, the prosecutor's conduct during plea negotiations was vindictive and violated his due process rights. The United States Supreme Court eventually granted *certiorari* to review the issue. *Bordenkircher*, 434 U.S. at 360, 98 S.Ct. at 666, 54 L.Ed.2d at 608-09. The Supreme Court observed that the due process violation addressed in cases such as *Pearce* and *Perry* resulted not from the potential that a defendant might be deterred from exercising a legal right, but rather from the danger that the prosecutor or court may be retaliating against the defendant for lawfully challenging his conviction. *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 667-68, 54 L.Ed.2d at 610. Thus, the Supreme Court recognized a distinction between punishing a defendant after the fact for having successfully exercised a right and discouraging a defendant from exercising that right in the first instance, stating that

> [t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." But in the "give-and-take" of plea bargaining, there is no such element of punishment or

8

retaliation so long as the accused is free to accept or reject the prosecution's offer.

*Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610-11 (citations omitted).

On that basis, the Supreme Court held that the prosecutor's actions during the pretrial proceedings and plea negotiations did not violate the defendant's due process rights. *Bordenkircher*, 434 U.S. at 365, 98 S.Ct. at 669, 54 L.Ed.2d at 612. This Court has embraced the *Bordenkircher* rationale under similar facts, stating that "a prosecutor is not prohibited from seeking increased punishment for prior convictions after the plea bargaining process had broken down." *See State v. Johnson* (1978), 179 Mont. 61, 68, 585 P.2d 1328, 1332.

¶18 In negotiating a plea agreement, the parties bargain with each other, each offering certain concessions to reach a mutually acceptable resolution of a case. Thus, as occurred in this case, a prosecutor may offer to recommend a less than maximum sentence in exchange for the defendant's agreement to plead guilty to an offense. The defendant is free to accept or reject a plea offer. If a defendant rejects a plea offer, the prosecutor may proceed with the case and make any legal sentencing recommendation because no agreement to the contrary has been reached.

¶19 Here, the District Court informed Killam at his arraignment that the maximum sentence for the aggravated assault offense was 20 years in prison and a $50,000 fine. The court further informed Killam that he could be sentenced to an additional 10 years in prison for having used a dangerous weapon in the assault, thus making a potential maximum total

sentence of 30 years in prison. Killam then entered into plea negotiations in which the State offered to recommend a sentence less than the maximum available sentence. Killam refused the plea offer and later entered a guilty plea without a plea agreement in place. When he entered his guilty plea, the District Court again informed him of the 30-year maximum possible sentence. With no plea agreement in place, the State was free to recommend the imposition of the maximum sentence. We conclude, therefore, that the District Court did not err in overruling Killam's objection to the State's recommended sentence at the sentencing hearing.

¶20 We hold that Killam's right to due process was not violated at the sentencing hearing when the prosecution recommended the imposition of the maximum sentence allowed by statute.

¶21 Affirmed.

/S/ KARLA M. GRAY


We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE