No. 04-705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 119

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

BILL WILBUR TRULL,

       Defendant and Appellant.

APPEAL FROM:    The District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DC 2003-33,
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Kristina Neal, Assistant Appellate Defender, Helena, Montana

      For Respondent:

      Hon. Mike McGrath, Montana Attorney General, C. Mark Fowler,
Assistant Attorney General, Helena, Montana

      Robert Zimmerman, Sanders County Attorney, Thompson Falls, Montana

Submitted on Briefs:  November 16, 2005

Decided:  May 31, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Bill Wilbur Trull appeals his jury conviction of felony aggravated assault.  He argues that his conviction should be overturned and the charges dismissed because terms used in the aggravated assault statute are unconstitutionally vague.  He also moved for a new trial based on ineffective assistance of counsel and alleged perjury by the victim of his admitted assault.  The District Court denied each motion.  We affirm.

**ISSUES**

¶2     A restatement of the issues on appeal is:

¶3     Did the District Court err in denying Trull's motion for a new trial based on the alleged perjured testimony of the man he assaulted?

¶4     Did the District Court err in denying Trull's motion for appointment of new counsel and a new trial based on trial counsel's ineffective assistance?

¶5     Did the District Court err in denying Trull's motion to dismiss based on the unconstitutionality of § 45-2-101(66), MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6     On April 22, 2003, after a day spent fishing together, Trull and Harold Shaw stopped at a bar for a drink.  While in the bar Trull got loud and began challenging other patrons to fight.  Shaw told Trull to "shut up" at which time Trull punched Shaw in the face.  The punch cut Shaw over his left eye and knocked him from his bar stool.  The bartender called an ambulance but Shaw refused to leave in it.  Shaw went home but later that night went to the hospital.  He also reported the incident to the police.  Shaw claimed that the blow caused him

2

to have blurred or double vision, and that he suffered, in the words of the aggravated assault statute, "protracted loss or impairment of the function or process of a bodily member or organ."

¶7     Trull was initially charged with misdemeanor assault, but later was charged with felony aggravated assault. He entered a plea of not guilty. The case proceeded to trial on December 1-2, 2003, and a jury convicted Trull. After the trial, Trull moved for a new trial claiming that Shaw had perjured himself by providing testimony at trial that differed substantially from what he had told defense counsel and an optometrist before trial. Trull also filed a motion to dismiss on the ground that the term "protracted loss or impairment" as used in the aggravated assault statute was unconstitutionally vague. Lastly, Trull moved for a new trial, arguing that his trial counsel was ineffective. The District Court denied each motion without making findings of fact or conclusions of law. The court sentenced Trull to ten years at Montana State Prison (MSP), with three years suspended. Additional facts will be discussed as necessary to our analysis.

## STANDARD OF REVIEW

¶8     Our standard of review of a district court's ruling on a motion for new trial is whether the district court abused its discretion. *State v. Azure*, 2002 MT 22, ¶ 30, 308 Mont. 201, ¶ 30, 41 P.3d 899, ¶ 30 (citation omitted).

¶9     Claims of ineffective assistance of counsel present mixed questions of law and fact that we review *de novo*. *State v. Grixti*, 2005 MT 296, ¶ 15, 329 Mont. 330, ¶ 15, 124 P.3d 177, ¶ 15.

3

¶10 The denial of a motion to dismiss in a criminal case presents a question of law. *State v. Mallak*, 2005 MT 49, ¶ 13, 326 Mont. 165, ¶ 13, 109 P.3d 209, ¶ 13. We conduct plenary review of a district court's conclusions of law to determine whether the court's conclusions are correct as a matter of law. *City of Billings v. Gonzales*, 2006 MT 24, ¶ 6, 331 Mont. 71, ¶ 6, 128 P.3d 1014, ¶ 6 (citation omitted).

## DISCUSSION

¶11 A person commits the crime of aggravated assault when he or she "purposely or knowingly causes serious bodily injury to another." Section 45-5-202, MCA. *State v. R.B."J"C.*, 2004 MT 254, ¶ 15, 323 Mont. 62, ¶ 15, 97 P.3d 1116, ¶ 15. "Serious bodily injury" is defined as a bodily injury that "creates a substantial risk of death; causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ." Section 45-2-101(66), MCA.

¶12 Trull admits purposely hitting Shaw; therefore, satisfaction of the first element of aggravated assault is undisputed. What Trull challenges in this appeal is Shaw's claim that his injuries constitute "serious bodily injury." He asserts that Shaw lied about the severity of his injury, the condition of his glasses on the night of the incident, and a subsequent ophthalmologist appointment. Trull contends that because his conviction was based on Shaw's perjured testimony, he should be granted a new trial.

¶13    Trull maintains that prior to trial Shaw complained only that he experienced blurred vision as a result of Trull hitting him. Shaw's optometrist, Dr. Schull, confirmed that during Shaw's three visits with him, Schull was attempting to correct Shaw's blurred vision. Additionally, in pre-trial interviews with Trull's counsel, Shaw repeatedly complained of blurred vision. However, at trial, Shaw complained of intermittent double-vision accompanied by sharp shooting pains in his head, and claimed that his new glasses did not correct his problems, and that his old glasses worked just as well as the new ones.

¶14    Shaw also testified at trial that when Trull struck him on April 22, Trull knocked him to the floor and the bar stool on which he was sitting fell on his face and loosened three teeth. Shaw claimed that his glasses were bent and broken during the assault. However, the bartender who witnessed the episode and picked up Shaw's glasses after the assault, testified that the glasses were not broken or bent, and that the bar stool did not hit Shaw in the mouth. Trull contends that these purportedly false statements by Shaw, pertaining to the dispositive issue of the seriousness of his injury, deprived him of a fundamentally fair trial.

¶15    Lastly, Trull asserts that Shaw lied about an appointment with Dr. Murdock, an ophthalmologist with whom Trull's counsel had arranged a paid-for diagnostic appointment. Shaw testified at trial that Murdock refused to see him unless Shaw paid for the appointment, and he therefore left without seeing Murdock. The record reveals, however, that Murdock notified Trull's counsel by letter, that when Shaw arrived in his office, the receptionist told him that other arrangements had been made for payment and requested that Shaw fill out the "new patient" forms. Shaw ultimately declined to do so and left without seeing Murdock.

Murdock offered to reschedule the appointment with Shaw, but Trull's counsel did not arrange for another appointment.

¶16 Relying on *State v. Greeno* and several out-of-jurisdiction cases, Trull argues that his conviction, based in part on false evidence, does not comport with fundamental fairness, and the District Court erred when it denied his motion for a new trial in light of Shaw's perjured testimony. *Greeno* (1959), 135 Mont. 580, 592, 342 P.2d 1052, 1058 ("Courts will always grant a new trial where it appears there has been a trace of perjured testimony presented to the jury resulting in a conviction.").

¶17 The State counters that while Shaw's testimony may have differed from earlier interviews or recounts of the event, he did not perjure himself. The State explains that what Shaw complained of as "blurry" vision, Dr. Schull identified as double vision. This is a difference in nomenclature, not perjury. The State also maintains that saying something new for the first time at trial does not constitute perjury.

¶18 A person commits perjury if "in any official proceeding he knowingly makes a false statement under oath or equivalent affirmation or swears or affirms the truth of a statement previously made, when the statement is material." Section 45-7-201(1), MCA. A false statement "is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law." Section 45-7-201(3), MCA.

¶19    The test for materiality is whether in the actual factual situation involved, it would be reasonable to find that a witness' statement, if believed, could have altered the course or outcome of the proceeding. *State v. Thompson* (1978), 176 Mont. 150, 154, 576 P.2d 1105, 1107 (citing *State v. Scanlon* (1977), 174 Mont. 139, 569 P.2d 368).

¶20    In the case before us, the record reveals that the jury was presented with conflicting evidence, inconsistent testimony, as well as allegations of perjury and accusations of poor character. It nonetheless concluded that there was adequate evidence to support a guilty verdict, *i.e.*, that Trull struck Shaw and Shaw suffered protracted loss or impairment to his eyesight as a result of the strike. It is within the province of the jury to weigh the evidence based on the credibility of the witnesses and determine which version of events should prevail. *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, ¶ 7, 119 P.3d 74, ¶ 7. This is exactly what the jury did in this case. Moreover, much of the "new" testimony, as well as differing testimony presented by Shaw, such as how Dr. Murdock's bill was going to be paid or whether the lens of his glasses was shattered or merely fell out of its frame when he was hit, was immaterial. We conclude the District Court did not abuse its discretion when it denied Trull's motion for a new trial based on allegations of perjury.

¶21    Next, Trull argues that the court erred in denying his motion for appointment of new counsel based on trial counsel's ineffective assistance. After Trull's trial, Trull's trial counsel, Gill, requested that the District Court appoint Trull new counsel and grant him a new trial because she had provided ineffective assistance. Gill posited to the District Court that when new medical evidence emerged during the trial, she should have requested a

continuance in order to consult with Dr. Murdock to determine the impact of the new information. She maintained that her failure to do so constituted ineffective assistance, and that Trull should be granted a new trial with newly appointed counsel. Trull adopts Gill's argument on appeal.

¶22 To assess a claim of ineffective assistance of counsel this Court applies the two-prong test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, which requires the defendant to "show that his counsel's performance was deficient and that the deficient performance prejudiced the defense and deprived the defendant of a fair trial." *State v. Weldele*, 2003 MT 117, ¶ 68, 315 Mont. 452, ¶ 68, 69 P.3d 1162, ¶ 68 (citation omitted). When employing this test, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Weldele*, ¶ 70 (citing *Strickland*, 466 U.S. at 690). In an effort to eliminate the distorting effects of hindsight, we employ counsel's perspective at the time of trial to determine whether the conduct was reasonable. *Grixti*, ¶ 25. Moreover, self-proclaimed inadequacies on the part of trial counsel in aid of a client on appeal do not hold great persuasive value with this Court. *Weldele*, ¶ 69 (citing *People v. Beagle* (Cal. 1972), 492 P.2d 1.

¶23 Trull claims that when Gill consulted Dr. Murdock as an expert before trial, Murdock told her that reviewing x-rays alone would not allow him to conclusively determine the extent of Shaw's eye injury. Murdock indicated that he needed to either examine Shaw or review CAT scan results to determine the severity of Shaw's injury. As stated above, Shaw

8

did not allow Murdock to examine him. However, Trull argues that on the second day of trial Gill received a set of previously-undisclosed medical records, including results of a CAT scan, that definitively established that Shaw had <u>not</u> suffered an orbital fracture. Gill argued to the District Court and Trull argues here that Gill should have requested a continuance to allow Murdock to review the new evidence and evaluate its impact, as well as to discuss with Murdock Shaw's "new" claims of intermittent pain and double vision. Gill and Trull both maintain that her failure to do so constituted deficient performance which prejudiced Trull.

¶24 The State counters that when these documents were presented, Gill requested and received a recess to review the documents. She was also offered a continuance by the court. After reviewing the documents, however, she declined the continuance, questioned the witness, and introduced the documents into evidence. Moreover, the State argues, Gill was provided medical records before the trial that clearly showed Shaw did not have an orbital fracture, and therefore the CAT scan result did not offer truly new evidence. The State also notes that Gill posed a question to Shaw during cross-examination that showed unequivocally that she knew Shaw did not have an orbital fracture.

¶25 The Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee the right to effective assistance of counsel. Ineffective assistance of counsel claims fall into two categories: record-based and non-record based. *State v. Novak*, 2005 MT 294, ¶ 18, 329 Mont. 309, ¶ 18, 124 P.3d 182, ¶ 18 (citation omitted). We will consider only record-based ineffective assistance claims on direct appeal. *Novak*, ¶ 18. We review whether the record discloses why counsel took, or failed to take, the

9

action in controversy when determining whether an ineffective assistance of counsel claim is appropriate for direct, record-based review. *Novak*, ¶ 18 (citation omitted). The claimant must raise a claim of ineffective assistance of counsel in a petition for post-conviction relief if the allegation cannot be documented from the record. *Novak*, ¶ 18.

¶26 While the trial transcript does not contain any explanation of why counsel chose not to request a continuance, we will nonetheless review this claim on direct appeal in light of counsel's post-trial motion and affidavit in which she posits that she had no justifiable reason for not seeking the continuance. Accordingly, we now examine whether counsel's performance was deficient, and whether the deficiency prejudiced Trull. *Weldele,* ¶ 68.

¶27 We conclude that counsel's performance was not deficient. The medical records reviewed prior to and presented during trial already demonstrated that Shaw had not suffered an orbital fracture; thus, the new evidence was at best cumulative. Moreover, the purported inconsistencies in Shaw's testimony were repeatedly noted and argued by Trull's counsel during trial. We conclude that Gill's decision under these circumstances to proceed with the trial rather than request a continuance falls within the wide range of reasonable and professional assistance. *Grixti*, ¶¶ 28-29.

¶28 Lastly, Trull complains that the District Court erred in denying his motion to dismiss based on the unconstitutional vagueness of the definition of "protracted impairment" codified at § 45-2-101(66), MCA, and used to define the term "serious bodily injury" contained in the aggravated assault statute, § 45-5-202(1), MCA. Trull maintains that the words "protracted" and "impairment" are not statutorily defined, and are "standardless," allowing a jury to

"apply its own capricious standards" which, in turn, allows for arbitrary and discriminatory application of the law.

¶29     The State counters that many statutes contain words that are not statutorily defined, or have "technical meanings," and that because the terms challenged by Trull have common meanings that are understood by reasonable persons of average intelligence, they are not unconstitutionally vague.

¶30     First, we presume that all statutes are constitutional, and we attempt to construe them in a manner that avoids unconstitutional interpretation. See *State v. Stanko*, 1998 MT 321, ¶ 15, 292 Mont. 192, ¶ 15, 974 P.2d 1132, ¶ 15 (citations omitted). If, however, the constitutionality of a statute is challenged, the party making the challenge has the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional. Any doubt is resolved in favor of the statute. *Stanko*, ¶ 16.

¶31     A vagueness challenge to a statute may be raised on two different bases: (1) the statute is so vague that it is rendered void on its face; or (2) it is vague as applied in a particular situation. *Stanko*, ¶ 17. From Trull's argument, we presume he is claiming that the statutory language is vague on its face.

¶32     It is well-established that in construing a statute, we look to the intention of the legislators. Section 1-2-102, MCA. We have held on several occasions that the intention of the Legislature is first determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, we may not go further and apply any other

means of interpretation. See *Dunphy v. Anaconda Co.* (1968), 151 Mont. 76, 79-81, 438 P.2d 660, 662, and cases cited therein.

¶33 The Legislature need not define every term it employs when constructing a statute. If a term is one of common usage and is readily understood, it is presumed that a reasonable person of average intelligence can comprehend it. *State v. Nye* (1997), 283 Mont. 505, 513, 943 P.2d 96, 102 (citations omitted). The failure to include exhaustive definitions will not automatically render a statute overly vague, so long as the meaning of the statute is clear and provides a defendant with adequate notice of what conduct is proscribed. *Nye*, 283 Mont. at 513, 943 P.2d at 101-02.

¶34 The terms "protracted" and "impairment" are not obscure or incomprehensible. These are terms of common usage capable of ready understanding; thus, we can presume that a reasonable person of average intelligence would comprehend their meaning. *Nye*, 283 Mont. at 513, 943 P.2d at 102. We also note that other jurisdictions called upon to interpret "protracted" have concluded that the concept of the word is not beyond the grasp of a jury or subject to "unstructured discretion" in applying it. See *State v. Jim* (N.M. App. 1988), 765 P.2d 195, 200. See also *Walker v. State* (Alaska App. 1987), 742 P.2d 790 (A victim's broken jaw preventing him from chewing food for six weeks constituted a "protracted impairment" of a body member or organ.); *People v. Gray* (N.Y. App. Div. 1975), 47 A.D.2d 674, 675 (Victim sustained several stab wounds to arm and back which resulted in an inability to spontaneously open his left hand which endured for more than two months.).

¶35 The foregoing cases illustrate that when determining what is considered "protracted," courts look to the circumstances of the case before them. As the court in *Jim* stated, "[t]he fact finder must consider the circumstances and determine whether there was a protracted impairment." *Jim*, 765 P.2d at 200. The jury in the case before us did just that, determining that Shaw's injury constituted a "protracted impairment." We will not disturb this determination.

¶36 We conclude that the aggravated assault statute, § 45-5-202(1), MCA, taken as a whole, is not misleading as to the conduct prohibited, nor is it unconstitutionally vague. Therefore, the District Court did not err in denying Trull's motion to dismiss.

## CONCLUSION

¶37 For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART

13